I believe that the judgment had not yet been executed as to the jail term. And if I'm not mistaken, the state court had stayed the actual running of the probation and so it was still in effect. And what I don't know offhand is whether the probation, which was one year in length, actually ever has started running. But in the interim, it is true that the two-day jail sentence, the 48-hour jail sentence that state court refused to continue to stay the thing during a period of time when we had a motion asking the district court to stay it, and that had not yet been adjudicated by district court. And then by the time the district court was able to pay attention to it, the 48 hours had run out. So I think... But isn't what matters for purposes of a habeas is what was true at the time the lawsuit was filed? That's right. And I think the law is clear that if the person was under restraint, which would include probation at the time the lawsuit was filed, the fact that the restraint goes away does not render the matter true. And that's what we would contend is true here. So we have then a case where, in some respects, the critical evidence against the defendant came in in the absence of the application... I have another preliminary question. Sure. There were two statements, one to a medic and one to a police officer. Is that right? Well, yes. But only the one to the medic is at issue because the one to the police officer has not been the subject of the case of the district, of the state court case or the district court case. Is that much correct? I think that's more or less correct. But my understanding is that the statement was made by the witness in the presence of both the officer and the medic. And so what you really have is, in effect, one statement made by the witness, which is recorded. But isn't it then of critical importance to the harmless error issue on any guise that one of those... that we're only talking about one of two people who testified to the same thing, or largely to the same thing? So isn't it just harmless per se because the other one testified to it and he's not being contested? I don't think that's true that he's not being contested. What happened was the statement was admitted and the intermediate court held that there was a confrontation clause violation under the previous standard of Ohio v. Roberts and that the state failed the Roberts test because they failed the question of unavailability. Because at the trial all they said was, the witness isn't here and we have no clue basically where she is and there was no showing that they had made any diligent efforts. But the Hawaii Supreme Court reversed the ICA, right? But they reversed the ICA only on the question of harmless error because the state had conceded, and the Supreme Court says this when they filed their cert petition with the Hawaii Supreme Court, they conceded the confrontation clause violation. So that was taken as a given. There has been a confrontation clause violation, and then the Supreme Court of Hawaii. But only with regard to one witness, not the other. This is what's confusing me, only with regard to one witness. So the other one comes in and has to be considered in the harmless error calculation, right? Well, except if it's only one statement, I think that whether it comes in one way or two ways, it still makes a difference. Because there's no basis to admit the officer's statement because the witness is unavailable. Because that's a statement made in anticipation of litigation. But it still comes into the treating medic under the hearsay exception. I don't think that's true because... The trial court thought it did, and specifically made its ruling on the basis of a rule of evidence. But it's not a statement that, yeah, that issue wasn't taken up. But the confrontation clause was raised. But the reason it's not a statement made for purpose of medical diagnosis is the witness two times refused medical treatment. That's after the fact. The first question is what are you, what injury did you suffer? That was the question that essentially the medic was asking. The fact that the victim later declined medical treatment is totally irrelevant to the evidence here. Well, except that it wasn't later that the victim declined medical treatment. It was maybe one of the times she refused two times. The first time was before any question had been asked. Well, you're not seriously suggesting that when a medic is called to the scene of an altercation and examines the victim that the purpose of that examination is not for medical purposes, are you? If the person has injuries so minor that they can't be photographed, if the person is saying... You've got eyewitness testimony that you could see the marks on the neck. Your client admitted that he choked her. I don't think he admitted that he choked her. He admitted he put his hand on her neck. But the trial court found, as a matter of fact, that he choked her. So, you know, I don't think that's going to get you very far. And the trial court found that he... Can you answer my question going back to the medic? What other reason would a medic have to ask the victim about her condition if it wasn't for purposes of assessing her for purposes of medical treatment? He might have in mind that he's assisting his colleague who works for the county of Maui, the police officer. So he's now for a posse comitatus? He's there as an adjunct to the police? I don't say that. But what I say is that the police can't turn an interrogation into a statement made for purpose of medical diagnosis by asking the paramedic to come here and listen up. In effect, that's what I think... Mr. Wolf, what evidence came in as a result of the extrajudicial statements that were made... What came in? ...that wasn't already before the court? Well... For example, you had the red marks on the neck, and you've got Mr. Welch who had his interrogation, if you will, questioning at the time of the event when he said what happened, and then he testifies at trial. So what difference would it make if you'd kept all of that stuff out that she said? You still had a complete case, it seems to me. That's not true. Now, what was lacking? All right, here's what was lacking. First of all, the element of abuse of a family or household member includes... I'm sorry, what? One of the elements of the offense, the state court offense, state law offense of abuse of a family or household member, is that the victim suffered bodily injury. And what that means... And Mr. Welch said in his written statement that he turned himself in because I had scared her and hurt her. Right. That's not good enough? That's not good enough, no. Why? Because it's required that there be proof that the victim suffered bodily injury, which includes... He said he hurt her. Well, maybe he was wrong. There's certainly some evidence that he hurt her, certainly some significant evidence that he hurt her that somebody could rely on that he said he hurt her. One of the elements is that she had some pain or suffering, and her statements that she felt pain and had trouble swallowing were necessary to an element of the offense. And they were necessary as... Even if the eyewitnesses testified that they saw marks around her neck and he admitted in his statement that he touched her, isn't that sufficient under domestic violence laws in order to take him into custody as the primary aggressor? Well, the answer to that question may be yes. Yeah, it might be yes, but it doesn't matter in this case, even if it is yes, and here's why. Because the question under the harmless error analysis of Chapman is how did the admission of this evidence, which was wrong under the Confrontation Clause, affect this case? And we know exactly how it affected this case because the state court judge told us, and one of the things he told us was that the State of Hawaii's Corpus Delecti Rule would have excluded Mr. Welsh's confession in the absence of the Confrontation Clause problematic statement that came in, and the judge actually said that. Why wasn't the eyewitness observation sufficient, i.e., they came and they saw red marks around her neck? Well, I don't know why it wasn't sufficient, but the state judge said it wasn't sufficient and he said... Where is that in the record? In his Rule 29 Rule of Judgment, which begins at page 67 of our excerpt, over those two pages, starting on excerpt 67 and so forth, and 68, he says, in terms of the statement of the defendant and the statement of the eyewitness, that those three in and of themselves would not be sufficient to meet the state's burden of presenting evidence to establish the material element as of the complaint. And then he goes on to say that the corroboration of this course would be the observation seen by the medic. Exactly, the observation seen by the medic. Right. That's right. That's not anything that was said. But turn the page of my excerpt. He goes on two paragraphs. He says, and the statements given to the medic in this case, as far as his gathering information to assist in the treatment, as is, I guess, due to your profession. So there is corroboration. If the trial judge actually relies upon the evidence that was admitted erroneously under the Constitution, we have a Chapman violation, per se, because we know that it actually affected it. You keep saying that it was admitted erroneously, but I'm still hung up on the fact that it was properly admitted under the rules of evidence as a statement for purposes of medical treatment. I know you want to focus on the police officer, but. No, no, no, I don't want to focus on the police officer. I want to focus on the decision of the Hawaii Supreme Court, which is what's reviewable on this. We can't justify what they did by some of the theory that they did in advance. But they cited all that in their decision, Mr. Wolf. I mean, you're trying to parse it in a way that the opinion cannot fairly be segregated. They looked at all of it. They looked at the evidence to examine the question of harmlessness. But as to, I think, your analysis, as I understand it, what you're saying is that. It's an AEDPA analysis is what it is. The question is, was it so objectively unreasonable that we can conclude that they have inappropriately applied federal law, both to the facts and the law, as dictated by the Supreme Court of the United States? Well, here's an example, and this, I think, is the case that you should look to, which is the Fahey case that was decided before Chapman. If you look at that case and see where they said that the application of the rule of error there would require reversal, there, the question, it wasn't a confrontation question. It was a question of the admission of evidence that was allegedly illegally seized. But the principle that Chapman established was really set forth in Fahey. And in Chapman, they say, our harmless error analysis is what we said in Fahey. Here's what Fahey was about. A couple of guys spray some swastikas on a building, and then they're arrested. This evidence is seized illegally that comes into the trial. But in the meantime, they confess. There's other witnesses. They get on the witness stand at trial and acknowledge that they did it, but they're trying to pursue a defense under Connecticut law that's a misdemeanor, not a felony. And the Supreme Court of the United States says, you know what? We can't conclude under this record that this didn't affect the outcome of the case, so we're going to reverse because of the constitutional error. Given that, our record here is far less egregious in terms of the nature of the evidence. But you're urging a rule of per se reversal, which the Supreme Court has not declared. The Supreme Court has said if you find a confrontation clause violation, you apply harmless error. You don't apply ordinary harmless error. You apply Chapman constitutional harmless error, which puts the burden on the state to prove beyond a reasonable doubt that the error was harmless, and you have a conclusion by the Hawaii Supreme Court to that effect. And then the question under AEDPA is whether or not that conclusion is objectively unreasonable. Isn't that the analysis? Am I missing something here? Well, that's one prong of the analysis. But the other prong of the analysis is under the third part of the AEDPA, I think there's a pretty good argument that they didn't even apply the rule set forth in Chapman because they never state the rule in terms of whose burden it is, and they only discuss the question of whether there was sufficient evidence to support the conviction, which is the exact wrong approach under Chapman. The question is not whether there was sufficient evidence. The question is whether you can say with confidence that there's no reasonable possibility that this evidence affected the verdict. And we know that it affected the verdict because the judge said it affected his verdict. So if it affected his verdict, it's time to reverse the district court in this case. So what do I do with the language of the Hawaii Supreme Court opinion? Cites to the case, their case, the state versus Pasetti, which sets out the harmless error test. It looks to me like they put their finger right on the rule of law. He stated it, harmless beyond a reasonable doubt. Right. And then here's what they don't go on to say, which was the critical application of Chapman, because Chapman explained what that means. And here's the words from Chapman.  Whether there is a reasonable possibility that the evidence might have contributed to conviction. They never analyzed that question. And that is the question. So if you just say, well, was it harmless? And then you start talking about how much evidence there was, you've answered the wrong question. When what you need to look at is whether there's a reasonable possibility that it might have contributed to conviction. And when you know from the record in the trial court, because the judge said, in effect, he said, I would have to grant this Rule 29 motion except for this evidence. Well, does this standard apply to a Rule 29 motion as opposed to a jury verdict? I mean, it seems to me that we know that as a matter of law, as I understand it, that the observations were sufficient corroboration. The statements don't matter as a matter of law. So why does that matter with regard to what the judge said in making a legal ruling? Well, because the judge who made the legal ruling is the trier of fact. There was no jury here. But as to that, he wasn't a trier of fact. As to that, he was making a legal ruling, right? No, but so when he says, I'm taking into account the victim's statements made to the medic in ruling on the Rule 29, and when at the end of the case he then says, I find this case has been proved beyond a reasonable doubt, there's no reason to think he isn't taking into account the statements made to the medic. Can I ask a different question? In your briefs, you spend a lot of time talking about the two different strains of confrontational cases and suggest that somehow the wrong one was applied and that that mattered. I didn't understand that whole argument. And you don't seem to be making it here either, so maybe you've abandoned it. Well, I haven't abandoned it, but it seems to me it may have, well, I think your question speaks to the issue. It may have unnecessarily complicated the question. Because what they ultimately meant, it seems to me, by the standard of the full effect of confrontation, is essentially you knock out the witness. So in either event, you knock out the witness. The witness is out. And we figure out harmlessness with the witness out. Or you give the trier of fact some reason to question the witness. Because the court's case, this court's case, and Fowler indicated that one of the bases of cross-examination is just to show the witness is exaggerating or it's not just bias or Perry Mason-like. But we're going beyond that. We're just taking the witness out, and we're looking at the, as to the Hawaii Supreme Court. So that's better than the other, right? You're just saying he's out. The witness is out. Now is there harmless error. Gone. So I don't see what the difference is. Because there were at least a couple of issues about which the witness might have been cross-examined that were relevant. One is. But if we're assuming that his credibility is zero now, he's not there, then how is it any better if he could have been cross-examined? For harmless error purposes. Well, the only way in which it might be true in this particular case is because Mr. Welsh had a defense of the use of force to remove someone from his apartment who had remained there unlawfully. And so if Ms. Chandler had actually been there as a witness, as opposed to the statements that came in of what she would have said, according to what she said to the medic, there would have been the opportunity to cross-examine whether she acknowledged that she had remained unlawfully after being asked to leave, which would have gone to a defense which, under Hawaii law, was an element of the statement. But that's not really cross-examining. That would be using her as a permanent witness, essentially. Well, yes or no. Yeah, that's a fair observation. But it only could happen if she was on the witness stand. So I think that what we have here essentially is a situation where even though the Hawaii Supreme Court or this court apparently thinks they applied the right standard, they applied the wrong standard. And you can tell they applied the wrong standard by what they analyzed. And they never asked the critical question, which is whether there's a reasonable possibility that the evidence complained of might have contributed to conviction. And I think that's why the ICA, for example, spent really no time analyzing the question of harmlessness, because it's so obvious from this record that the prior fact actually relied upon the evidence that should not have been admitted. And since the prior fact actually relied on the evidence, you don't have to speculate about whether it might have had any impact leading to conviction. We know that it actually did in part lead to conviction. So your argument then relies totally on the corpus delecta issue and not on the question of what actually occurred. No, that's not true. It doesn't rely totally on that. It does rely on that. But it relies also on the government's burden or the state's burden in this case to prove the element of bodily injury. And it relies on the state's burden to disprove that Welsh had a justifiable use of force. And on those two points, the lack of confrontation was critical. Mr. Wolf, the piece of evidence that has to be corroborated, as I understand it, is Mr. Welsh's statement at the time that the investigator was talking to him. That comes in as a, quote, confession, unquote. But in order for it to come in, there has to be corroboration. Right. Now, there's arguably corroboration from other sources, the redneck that was observed, apart from what the witness said. Could that extrajudicial statement by Welsh have been corroborated by his in-court testimony? Would that be sufficient corroboration? Well, I don't think that's the proper analysis for this reason. If you take the trial judge's statements of what he thought was going on at face value, what he, in effect, was saying that in the absence of corroboration, this case would have been over at a point well before Mr. Welsh would have had to exercise his option to either testify or not. But there was corroboration, according to the state trial judge. Where did the corroboration come from? Did it come in part from the testimony that Mr. Welsh gave in court? I don't think so, because that question all came up before Mr. Welsh testified and was adjudicated before Welsh ever testified. What came up before he testified? The question of whether there was sufficient corroboration under Hawaii's corpus delecti rule. That came up in the context of, is there enough to survive the Rule 29 motion? And thereafter, it wasn't. And the court held there was because the corroboration came from the observation of the redneck and the statement to the investigator, or the medical treater. Right. The judge and the 911 tape. And the 911 call. Although maybe that's part of confession. I don't know. Yeah, I'm not going to have to be a confession if he voluntarily calls 911 to report that he's been in a fight and he's hurt his girlfriend. Well, I think that the court is getting at what I think is the same problem, but I fear I have been unable to articulate it. Well, you've got a tough factual record. I mean, you're doing an admirable job with very tough facts. That's a fatal comment right there. But I think the critical aspect is not to reexamine what the evidence shows when you read it, but to examine what the trial judge said was the effect of the evidence on him. Because if the trial judge is saying this evidence is affecting my adjudication of this case, then I think we have succeeded under Chapman because not only is there a reasonable possibility that the outcome was affected by the evidence, but we know it actually was affected by the evidence. And so we've gone beyond what Chapman required. Okay. We did succeed in doing it, and that's the way it is. But thank you very much. Thank you. Good morning. May it please the Court, Richard Minatoi, Deputy Prosecuting Attorney for the County of Maui, for the appellees. In deference to what the Court has brought to Mr. Wolf, I don't want to say too much and get myself in trouble. But I do want to point out that we do agree with the reply briefing that this is an easy case. It is our position that this is a family court case with a judge sitting instead of a jury, that sufficient evidence was submitted. Well, sufficient evidence is not the standard. That's correct. All right, so let's get off that. But there was overwhelming evidence. Overwhelming evidence is not the standard either. I agree with that, too, except that there was not only the testimony by the paramedic, which is the one that is in question at this point, but the testimony of the police officer that the complainant told him that she felt pain. And contrary to what was represented to the Court according to the record, it was done prior to the medic being called. So that statement was made to the police officer, wasn't objected to. She said she felt pain. That in and of itself is sufficient. Were these statements, were the two, were both of the Lair and the Polenko, was that his name, statements objected to at trial? My understanding, and I apologize, I inherited this case after the person that wrote the brief left our office. And in my review of this case, it seemed to be that there was no objection. Well, there was an objection made as to the officer's testimony, but not brought up as part of the actual appeal, direct appeal. Right, but it wasn't objected to at trial. That's correct. But it wasn't part of the direct appeal, and it wasn't part of the habeas case. That's correct. And in that sense, we would say that it's been waived. On that issue, that testimony stands, that he testified to her statement that she felt pain, the perception of pain was there. And also, that would serve as corroboration of the corpus directi as well. That's correct. So that's why I don't understand this case, because it seems to me that we have the evidence, even the hearsay evidence is in for our purposes at this point. There's a 9-1-1 tape. There's a testimony of the 9-1-1 operator. There's his verbal statement to the officer and his written statement to the officer. And also Officer Polenko's statement at the trial. That's correct. And, of course, the testimony about actually seeing the red marks. Now, as far as the photographs, contrary to the assertion that it couldn't be seen, the testimony was that it was blurry. It does strike me as exceedingly bad practice, and I hope that you've told whoever it was who did this that they wanted to do that. I'm pretty sure that the police department has been instructed not to discard those types of photographs in the future. But based on that, again, being the easy case that the appellant raises, the facts are there. There's no dispute that the testimony was that Officer Polenko said she felt pain. They saw the red marks, and that's sufficient to convict a defendant for abuse of a family or household member. If there's any questions, there are no further questions. I don't have anything else to refer to the court. Thank you very much. Thank you very much. I'll give you one minute to explain to me why the case isn't over once we know that one of the two statements, even on the corpus collective issue, is not at issue now, so that we have Officer Polenko's statement in the record for purposes of the Chapman analysis. Why isn't that the end of the case? Because it doesn't answer the question. Yes, it does. You're not challenging the reliance on that. So even as to your corpus collective issue, unless you think it would have made a difference for some reason that there were two of them instead of one of them, which you don't explain. I don't think that's the right question. That's just a variant of whether there was sufficient evidence absent this statement. No, it's not. It's responsive to your recognition, your emphasis on the fact that the judge relied on these statements. Well, he was entitled to rely on one of the two of them, and the other one was simply redundant. So what difference did it make? This Court has said, and the Supreme Court has said, that if you just examine these issues in terms of whether it's cumulative, you've focused again on the wrong point. Because if you focus on whether it's cumulative, which I take it is another way of stating what the Court is stating, or Your Honor is stating, you then dilute the Chapman standard, because now you're focusing again on whether the evidence was sufficient or overwhelming, or there was a lot of it, and you're not focusing on the Chapman question, which is can you say with certainty that the evidence that was a constitutional violation didn't contribute to the verdict? And here I think you have to say it did contribute. And just one small final point, which is in another way in which it contributed, was when the trial judge said this, this statement was necessary because there was this confusion about the identity of the victim. It was necessary to establish the identity, which is also a basic part of the State's case. Thank you very much, Counsel. The case of Welch v. Payton will be submitted. And we'll go to the last case of the day, Day v. Acolde, Illinois. Thank you.
judges: Thompson, Berzon, Tallman